NORTHERN TRUST CO., TRUSTEE UNDER THE WILL OF CLINTON BRIGGS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARTHA BRIGGS PHELPS, EXECUTRIX, ESTATE OF W. L. PHELPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARTHA BRIGGS PHELPS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JANE BRIGGS VOORHEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FRANK B. RICE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31943–31945, 32212, 32213.  Promulgated September 17, 1930.

*Herbert Pope, Esq.,* and *E. Barrett Prettyman, Esq.,* for the petitioners.

*Bruce A. Low, Esq.,* for the respondent.

870

### OPINION.

LOVE: The question in these proceedings, stated in its broadest sense, is what section or sections of the Revenue Act of 1921 are applicable to the facts as set forth in our findings. Petitioners contend that they *sold or disposed* of their stock in the W. L. Phelps Co. to the corporation itself; that the "basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property" is plainly provided for in section 202; and that the gain so derived was a "capital gain" taxable at 12½ per cent under the provisions of section 206. The respondent contends that the amounts received by petitioners in 1922 were "dividends" within the meaning of that term as defined in section 201, to wit, that "the term 'dividend' when used in this title * * * means *any distribution* made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913" (italics supplied); that the dividends constituted income under section 213, to wit, that "the term 'gross income'—(a) Includes * * * dividends"; and that such income was exempt from the normal tax under section 216, but taxable at the graduated surtax rates provided for in section 211 (a) (2) of the 1921 Act. Consequently, the question, restated in a narrower sense, is, Did Congress intend to treat transactions such as the ones before us as a sale or other disposition of stock by petitioners to the corporation or as a distribution of earnings or profits by the corporations to petitioners? We think it intended the latter.

Section 201 (c) of the Revenue Act of 1918 provided in part that:

* * * Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

Notwithstanding the specific language contained in the above-quoted provisions of the 1918 Act, it was the contention of taxpayers generally, under that act, that amounts distributed in the liquidation of a corporation were, nevertheless, "distributions," and should be taxed at surtax rates only, rather than at both normal and surtax rates, there being no provision in the 1918 Act corresponding to section 206 of the Revenue Act of 1921. This contention was denied by the United States Supreme Court in *Hellmich* v. *Hellman*, 276 U. S. 233, the court holding that under the Revenue Act of 1918 amounts distributed in the liquidation of a corporation should be treated as payments in exchange for stock or shares, and the gain or profit realized thereby taxed at both normal and surtax rates.

In the course of the enactment of the Revenue Act of 1921 the House Bill had provided, in section 201 (c), for the treatment of liquidating dividends in the identical language of the same section of the Revenue Act of 1918 quoted above. The Senate amendment eliminated the provision entirely and substituted as subdivision (c) the provision as to stock dividends appearing as subdivision (d) in the act as passed. The House accepted the amendment with an amendment which appears as subdivision (c) in the act as finally passed.

Due to the omission from the Revenue Act of 1921 of the above quoted provision of section 201 (c) of the Revenue Act of 1918, we held in *Frank D. Darrow*, 8 B. T. A. 276, that under the Revenue Act of 1921 "There would seem to be no doubt that Congress intended its definition of 'dividends' to include liquidating dividends to the extent of earnings accumulated since February 28, 1913," and in *Philetus W. Gates*, 9 B. T. A. 1133, it was held that a liquidating dividend received in 1921 on stock which had been owned for more than two years prior thereto and held as an investment was not taxable as a capital gain under section 206 of the Revenue Act of 1921 but at surtax rates under section 211. Cf. *Eric A. Pearson et al.*, 16 B. T. A. 1405, and *McCahan* v. *McCaughn*, 39 Fed. (2d) 3.

But petitioners contend that what they received from the corporation were not "liquidating dividends" and that the above cited cases are not in point. They contend that the amounts received by them constituted payments by the corporation in exchange for their

stock, or, stated in other words, that the essential character of the transaction here in question is a " sale or other disposition of property " (1921 Act, sec. 202) by petitioners to the corporation. They point out in their brief that the word *distribution* " is the appropriate word where action is taken by a corporation to turn over or transfer money or property to its stockholders without reference to any surrender of stock or other consideration given or offered by the stockholders "; that in the instant cases the stock was surrendered with the exception of the 300 shares retained by Phelps; that " distributions must be made ratably to all stockholders "; that from the evidence we should find that " no liquidation of the corporation was contemplated in 1922 "; that the corporation is still in existence; that under the decisions of the Supreme Court of the State of Illinois an Illinois corporation has the right to purchase its own shares from its stockholders; and that even where there is a complete liquidation it is possible under the Board's decision in *Frank Filer*, 14 B. T. A. 1084, to treat the transaction as falling within section 202 rather than section 201.

The test of a distribution is not whether the stockholder does or does not surrender his stock. Cf. *Eric A. Pearson et al., supra.* Neither is it necessary that alleged dividends always be pro rata to stockholdings. *Joseph Goodnow & Co.,* 5 B. T. A. 1154; *F. G. Lamb*, 14 B. T. A. 814. Relative to the request for a finding that " no liquidation of the corporation was contemplated in 1922," we think the evidence is clear that no *complete* liquidation was intended. Nevertheless, we believe that the legal effect of the transactions here in question, as far as the Revenue Act of 1921 is concerned, is that when the board of directors, comprising as it did the entire unified mind and interest of all the stockholders, instructed the president to purchase the outstanding stock at a definite maximum price, such action was to all intents and purposes an agreement among the stockholders to surrender their stock in exchange for a pro rata share of the distributable surplus, and that the 300 shares retained by the president represented only the value of the undistributable property, and when all other stockholders were eliminated he was left with 300 shares of stock as the sole owner of the corporation and virtual owner of all that remaining property. The other stockholders had completely liquidated, as was their intent, and as was clearly disclosed by the resolution adopted on January 9, 1923, only twelve days after the resolution of December 27, 1922, was adopted, by which the capital stock was reduced to the value of the 300 shares retained by the president. And we think this is true regardless of whether under the laws of the State of Illinois a corporation may

purchase its own stock. *Burk-Waggoner Oil Assn.* v. *Hopkins,* 269 U. S. 110. The case of *Frank Filer, supra,* cited by petitioners is distinguishable upon its facts.

Although we agree with the respondent that section 201 of the Revenue Act of 1921 is applicable to the facts in these proceedings, we do not entirely agree with his method of application, which we have set out in considerable detail in our findings. See *Eric A. Pearson et al., supra.* Section 201 reads in part as follows:

(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon.

(c) Any distribution (whether in cash or other property) made by a corporation to its shareholders or members otherwise than out of (1) earnings or profits accumulated since February 28, 1913, or (2) earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, shall be applied against and reduce the basis provided in section 202 for the purpose of ascertaining the gain derived or the loss sustained from the sale or other disposition of the stock or shares by the distributee.

Applying the above quoted provisions of section 201 to the facts stated in our findings, the amount of cash received by each petitioner in the year 1922 is held to be distributed from the following sources:

| Name of petitioner | (1) Earnings or profits since Feb. 28, 1913 | (2) Earnings or profits prior to Mar. 1, 1913 | (3) Otherwise than from (1) or (2) |
|---|---|---|---|
| Northern Trust Co., trustee | $179,221.73 | $48,561.30 | $64,716.97 |
| Martha Briggs Phelps, executrix | 179,221.73 | 48,551.30 | 64,716.97 |
| Martha Briggs Phelps | 71,688.69 | 19,424.52 | 25,886.79 |
| Jane Briggs Voorhees | 71,688.69 | 19,424.52 | 25,886.79 |
| Frank B. Rice | 67,705.99 | 18,345.38 | 24,448.63 |

With the exception of 300 shares in the case of Martha Briggs Phelps, Executrix, and 300 shares in the case of Rice, the record does not show the cost of the stock transferred by petitioners to the W. L. Phelps Co. during 1922. It is impossible, therefore, save for the two exceptions noted, to ascertain from the record the gain derived or loss sustained as required in section 201 (c), *supra.* See *Eric A. Pearson et al., supra.* Martha Briggs Phelps, Executrix, sustained a deductible loss in the year 1922 of $14,896.23 on the 300 shares

purchased and disposed of during that year. Rice derived neither a taxable gain nor sustained a deductible loss on the 300 shares referred to in the first sentence of this paragraph.

The deficiencies should be redetermined by including in gross income the dividends from earnings or profits accumulated since February 28, 1913, as set forth in column (1) above, instead of the amounts treated by the respondent as distributions, and by allowing Martha Briggs Phelps, Executrix, to deduct the loss of $14,896.23 referred to in the preceding paragraph.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*